UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUFFOLK, ss.
NO.:                                                    CIVIL ACTION 32

CASIMIRO ARMINIO BARROS, )
         Petitioner  )
)
v.                                           )
)      04 C 122 5
JOHN ASHCROFT, United States )
Attorney General;                 )
DENIS RIORDAN, Massachusetts )
District Director,                   )
Department of Homeland Security,)
U.S. Citizenship and Immigration  )
Services, and Immigration and     )
Customs Enforcement              )
         Respondents  )
)

## PETITIONER'S MEMORANDUM IN SUPPORT OF PETITION FOR HABEAS CORPUS

This Memorandum is filed in support of Petitioner's Petition for Habeas Corpus. Petitioner faces imminent deportation and removal from the United States due to Respondent's erroneous pretermission of Petitioner's petition for discretionary relief pursuant to INA, section 212(c), 8 U.S.C. § 1182 (c).

### Jurisdiction

This Court has jurisdiction to review Mr. Barros' Petition for Habeas Corpus pursuant to 28 U.S.C. § 2241. Mr. Barros has exhausted all his direct appeal rights under the INA. The INA and regulations promulgated thereunder allow Mr. Barros the right to appeal the immigration judge's deportation order only to the BIA. See e.g., INA § 242 (a) (2) (c), 8 C.F.R. §§ 3.1 (b) (3), 240.15. The BIA has stated that it lacks the authority to consider Constitutional issues of the type

1

raised by Mr. Barros and is bound by the decisions of the Attorney General. See Matter of Puentes Campos; Int. Dec. 3318 (BIA 1997); Matter of C-, 20 I&N Dec. 529 (BIA 192); see also 8 C.F.R. § 3.1 (g). Because of the ground of deportability Mr. Barros is subject to, he is precluded from filing a petition for review in the Court of Appeals. INA § 242 (a) (2) (C); see Goncalves v. Reno, 144 F. 3rd 110 (1st Cir. 1998); Kolster v. Reno, 101 F. 3rd 785 (1st Cir. 1997). Thus, there has been no independent, judicial evaluation of the correctness of the Attorney General's rulings of law in this case. This Petition for a Writ of Habeas Corpus is the only avenue, appropriate and available to this Petitioner.

Separate and apart from the review afforded by the INA, Mr. Barros, as a person within the borders of the United States, has a statutory and Constitutional right to petition the judiciary for relief when he is unlawfully detained by the executive branch of government. The right to petition, perfected in 28 U.S.C. § 2241, survived AEDPA and IIRIRA, both of which reshaped immigration law. In Goncalves v. Reno, supra, a lawful permanent resident petitioned for review of the Attorney General's statutory construction of a provision of the AEDPA. The District Court found that AEDPA divested it of habeas jurisdiction. The Court of Appeals reversed on the basis that neither AEDPA nor IIRIRA's transitional rules expressly repealed § 2241 jurisdiction. The Court applied the "longstanding rule disfavoring repeal of jurisdictional provisions by implication" and held that despite the "sweeping" language of newly-enacted INA § 242 (g), habeas jurisdiction pursuant to § 2241 remained available. See: Goncalves, supra, at 122. In addition, the Court found that its insistence on express repealer "eliminates the need to address serious, novel and complex Constitutional issues." Id. The holding of Goncalves has been followed in other circuits. See, e.g., Henderson v. INS, 157 F. 3rd 106 (2nd Cir. 1998) (§ 2241 jurisdiction survives AEDPA and IIRIRA transitional rules), cert. denied, 119 S. Ct. 1141 (1999) Mayers v. Reno - F. 3rd -, Slip. op. No. 97-55537 (11th Cir. May 20, 1999); Sandoval v. INS, 166 F. 3rd 225 (3rd Cir. 1999) (same); see also Magana-Pizano v. INS, 152 F. 3rd 1217 (9th Cir. 1998) (habeas corpus jurisdiction must be available to avoid Constitutional infirmities), vacated and

remanded for further consideration, 119 S. Ct. at 1137 (1999); but see LaGuerre v. Reno, 164 F. 3rd 1035 (7th Cir. 1998); Richardson v.Reno, 162 F. 1338 (11th Cir. 1998), petition for cert. filed, 67 U.S.L.W. 3561 (Feb.23, 1999) (permanent rules repeal habeas review).   While this case now would fall under IIRIRA's permanent rules, Mr. Barros' hearing took place under the transitional rules. The analysis of Goncalves controls and counsels that jurisdiction under § 2241 remains available to persons like Petitioner who are excluded from the INA's current review framework, and who seek an adjudication of issues of pure law. The transitional rules exclude aliens with certain criminal convictions from direct review in the court of appeals. Compare IIRIRA § 309 (c) (4) (G) with INA § 242 (a) (2) (c). Further, the "sweeping language" of the transitional rules is similar to the language of the permanent rules. The transitional and permanent rules both provide for the "sole and exclusive" procedures for direct judicial review.[1] Therefore, based on the analysis of Goncalves, neither the transitional nor permanent rules repealed by implication habeas jurisdiction pursuant to 28 U.S.C. § 2241 with regard to issues of law. Cf. Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 199 S. Ct. 936, n. 7 (1999) (Court finds that "there is disagreement [whether habeas review exists after IIRIRA] in the Court of Appeals" and noted Goncalves as case finding habeas review). As Goncalves controls in this district, this Court should find that it retains jurisdiction pursuant to 28 U.S.C. § 2241 to consider the merits of this Petition.

**Background Facts**

---

[1] Section 106 of the INA as amended by IIRIRA provided in pertinent part that it was:

> "The procedure prescribed by, and all the provisions of Chapter 158 of Title 28 shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation…"

While new INA § 242 provides in pertinent part:

> "Judicial review of a final order of removal…is governed only by Chapter 158 of Title 28 of the United States code, except as provided in subsection (b)…"

8 U.S.C. § 1252 (a) (1).

3

The Petitioner, Mr. Barros, immigrated to the United States as a lawful permanent resident on July 5, 1975, at the age of 9½, and has lived in the greater Boston area since that time. His father is deceased. His mother lives in Dorchester, MA. His 13 brothers and 5 sisters all live in the United States. Many of them are U.S. Citizens. He is now married to a U.S. Citizen. On March 14, 1995, he plead guilty to the offense of trafficking in cocaine. He has now served his state sentence. He has been released from Department of Homeland Security custody, pursuant to conditions of bond, awaiting his deportation.

On or about July 6, 1995, the INS formally instituted proceedings against Mr. Barros. In an Order to Show Cause ("OSC"), dated July 6, 1995, and served upon Mr. Barros on December 19, 1995, the INS charged that Mr. Barros should be deported from the United States based on the aforementioned conviction. The OSC was filed with the Immigration Court on April 5, 1996. He first appeared before the Immigration Court on January 15, 1997; and again on March 4, 1997. At the March 4, 1997 hearing, he requested an opportunity to apply for relief from the deportation pursuant to the former INA § 212 (c), 8 U.S.C. § 1152 (c). The Immigration Judge ruled that Mr. Barros was deportable, and that he was ineligible for the relief requested. An Order of Deportation was issued on that date. The decision and Order were appealed to the Board of Immigration Appeals ("BIA") on March 21, 1997. On October 10, 1997, the BIA issued a ruling, upholding the Immigration Court's decision. Subsequent to the Supreme Court's decision in I.N.S. v St. Cyr, 533 U.S. 289 (2001), this case was reopened, by agreement, so that this Petitioner could pursue his request for discretionary relief. At that point in time, the Department alleged that, as he had now served more than five years in prison for one or more aggravated felonies, he was once again ineligible to apply for discretionary relief, pursuant to INA, section 212(c). The Immigration Judge agreed and issued an Order of Deportation, dated September 24, 2002. A timely appeal was taken, and the BIA rejected the appeal in October 27, 2003.

**Due Process Violation**

Respondents "when executing the provisions of a statute effecting the liberty of a person may [not] disregard the fundamental principles that inhere in 'due process of law'", 189 U.S. 86, 100 (1903). The Due Process Clause commands that before an individual is stripped of a vital liberty interest, the government must employ fair procedures. Fiallo v. Bell, 430 U.S. 787, 792-93 n. 4 (1977) (Policies pertaining to the entry of aliens and their right to remain here are particularly concerned with the political conduct of the government. In the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process") (quoting Galvan v. Press, 347 U.S. 522, 531 (1954)); Landon v. Placentia, 459 U.S. 21, 35 (1982) (court, Congress or the INS, must determine "whether procedures must meet the essential standard of fairness under the Due Process Clause"). here, respondents' denial of the opportunity to apply for relief is a denial of due process because Mr. Barros' current statutory disqualification was due to Respondents' wrongfully denying him the opportunity to proceed with a request for relief that he was eligible for, at the time, but for the Respondents' improper and incorrect interpretation of the law. Such an important and fundamental aspect of an individual's life cannot be eviscerated by the effects of administrative delay, or mistake.

The Constitutional guarantee of due process was violated by the Respondents because the process used by Respondents to seek to deport Mr. Barros was fundamentally unfair in light of the grave interest at stake. Respondents' incorrect initial interpretation of the law led to Mr. Barros' inability to now seek relief because, at the time Mr. Barros plead guilty to the offense underlying his deportation, and at the time he first sought relief with the Immigration Court, he should have been eligible to apply for relief pursuant to INA, Section 212 (c) – his only means of possibly remaining a resident of the United States. However, there was no opportunity provided for Mr. Barros to seek such relief until, through the delay of the Appellate Process, his right to do so was taken away. Because Mr. Barros was unfairly foreclosed from seeking relief, a fortiori, the process available to him did not conform to due process of law. In Mathews v. Eldridge, the Court

developed a balancing test to determine whether the requirements of due process have been met:

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the additional or substitute procedural requirement would entail.

Mathews v. Eldridge at 335. The Mathews analysis is valid in the immigration context. Numerous courts have applied the test to cases challenging the Government's enforcement of the immigration laws. See e.g. Reno v. Flores, 507 U.S. 292 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings).

Application of the Mathews test suggests that the procedures employed by Respondent were lacking. The interest at stake for Mr. Barros could not be any greater.[2] In light of the life-altering consequences of deportation, the procedures employed by Respondents are unduly restrictive. There was no opportunity for Mr. Barros to make affirmative application for relief when it had been available to him, due to the misconduct of the Respondents. See Wallace at 113. Any future for Mr. Barros, in the United States, was taken out of his control. Id.

The Petitioner, Casimiro Barros, is a native and citizen of Cape Verde, now Portugal. He is a lawful permanent resident, and has been so since July 5, 1975. Deportation proceedings were initiated against him, by the Service, through the issuance of an Order to Show Cause, dated July 6, 1995, served upon the Petitioner of December 19, 1995, and filed with the Immigration Court, at Boston, on April 5, 1996. The Service has charged that the Petitioner is deportable pursuant to Sections 241 (a) (2) (B) (i) and 241 (a) (2) (A) (iii) of the Act; alleging, respectively, conviction for a violation of a controlled substance law, and conviction for an aggravated

---

[2] "[T]o be forcibly taken away from home, and family, and friends, and business, and property, and sent across the ocean to a distant land, is punishment; and that oftentimes most severe and cruel." Fong Yuc Ting v. United States, 149 U.S. 698 (1893) (Brewer, J., dissenting).

felony. Both charges are based upon the same conviction, in Norfolk County Superior Court, indictment #89924, for trafficking in cocaine.

The Petitioner admitted deportability, based upon that conviction, and sought relief pursuant to section 212(c) of the Act. The Service took the position that the Petitioner was ineligible for relief, pursuant to AEDPA, section 440 (d), based upon the Attorney General's position that this bar to 212(c) relief, although effective April 24, 1996, should be applied retroactively.

Based upon this, the Petitioner's request for section 212(c) relief was pretermitted; and, on March 4, 1997, he was ordered deported. A timely appeal of this decision was made to the BIA, on March 31, 1997. On October 10, 1997, the BIA dismissed the appeal, upholding the order of deportation, based upon the Attorney General's ruling with regard to the retroactive application of AEDPA.

The Petitioner subsequently filed a petition for Writ of Habeas Corpus. Upon the Supreme Court's ultimate determination that the Attorney General's position as to retroactivity was unconstitutional, the Service and the Petitioner agreed to the dismissal of the Habeas Corpus petition; and the re-opening of these proceedings in order to proceed with Petitioner's request for relief.    The Service now contends that the Petitioner is ineligible for 212(c) relief, because he has now served more than five years, in the aggregate, pursuant to two aggregated felony convictions.

Courts have concluded that most of the charging process, as to timing and content, is within the discretion of the service. However, once the process has begun,
and the Notice to Appear filed with the Court, the Department is bound by what has been filed, when it was filed. See: Matter of Ramirez-Somera, Interim decision #3185, 20

I & N Dec. (BIA 1992), and cases cited therein. See, also: In Re: Aldabesheh, 22 I & N Dec. 983 (BIA 1999). Once, however, it exercises its discretion it must proceed in dur course.

7

The Petitioner contends that the statutory structure contemplates a situation wherein a Petitioner, with a potential five (5) year incarceration impediment, may reach a final adjudication of his or her request for relief, depending upon when proceedings were initiated, prior to actually having served the said five years. See: Matter of Ramirez-Somera, supra.

In fact, the Immigration Court, in its oral decision of March, 1997, specifically found that, as of the date of the decision, the Petitioner was otherwise statutorily eligible, as "having not yet served five years of more on an aggravated felony." Oral decision, p.4.

The only reason that this Petitioner's equities as to eligibility for 212(c) relief were not addressed, and ruled upon, prior to his having served five (5) years, is that the Department asserted the retroactivity of AEDPA, based upon the directive of the Attorney General, which the Immigration Court felt constrained to follow. That directive has now been overturned, as to this defendant's situation, by the U.S. Supreme Court. See: I.N.S. v. St. Cyr, 533 U.S. 289 (2001). He was eligible for relief on March 4, 1997. A final adjudication of his request for relief would have, in due course, been determined while he was still eligible. This Court should look back to March 4, 1997 for his eligibility now. To do otherwise now would be a denial of due process.

### Equitable Tolling

On March 4, 1997, Equitable Tolling prior to having accrued five years of aggregate incarceration, Mr. Barros was prepared to proceed with his request for 212(c) relief. On that day, his request for relief was pretermitted, based upon the direction of the Attorney General to treat AEDPA retroactively. It took a number of years, but the Supreme Court finally issued a decision, I.N.S. v. St. Cyr, supra., ruling this retroactive interpretation unconstitutional, as it applied to this Petitioner's situation. The Petitioner and the Department agreed to re-open the matter, based upon this clarified interpretation of the law which the Petitioner had argued from the beginning. Now, the Department alleges that the further passage of

time, due solely to their incorrect interpretation of the law, which they themselves asserted, now makes Mr. Barros ineligible for the relief sought.

The Petitioner asserts that the five (5) year time bar to eligibility should be tolled; and he should be allowed to present his equities for 212(c) relief. "The doctrine of equitable tolling applies to prevent unjust results or to maintain the integrity of a statute, <u>Salois v. Dime Savings Bank</u>, 128 F 3rd 20, 25 (1st Cir. 1997), by stopping the running of a filing deadline in the light of established equitable considerations, Miller v. New Jersey State Department of Corrections, 145 F 3rd 616, 617 (3rd Cir. 1998)." <u>Sulay Jobe v. Immigration and Naturalization Service</u> 212 F 3rd (paragraph 31) (1st cir. 2000). The Petitioner asserts that equitable tolling, in this instance, is not inconsistent with the relevant statute. <u>See</u>: <u>Mater of Ramirez-Somera</u>, 20 I & N Dec. 564, 567) (BIA 1992). The Court, in <u>Sulay Jobe, supra.</u>, Paragraph 45, sets forth five factors to consider, but states, "these factors are not necessarily a perfect fit . . . . The fundamental principle is that equitable tolling is appropriate only when the circumstances . . . . are out of his hands." While we are not dealing with a deadline here, but with a time bar, the factors are similar, and the effect is the same. <u>See also</u>: <u>Neverson v. Bissonnette</u>, 261 F3rd 120 (1st Cir. 2001)

### Equitable Estoppel

Another legal theory, which Petitioner believes is applicable to his situation, is the theory of equitable estoppel, which the First Circuit has reorganized as being applicable, in certain instances, to Immigration cases, in <u>Akbarin v. Immigration and Naturalization Service</u> 669 F 2nd 839 (1st cir. 1982). <u>See, also</u>: <u>Best v. Stetson</u>, 691 F 2nd 42 (1st Cir. 1982).

"We believe that the soundest method of analyzing a claim of estoppel against the government in an immigration case is to make two principal inquiries: whether the government's action was error, and if the complaining party reacted to the error, whether the action was intended, or could reasonably have been intended to induce reliance. The second inquiry is strict: in immigration cases, where the government has been estopped, the government misconduct must have induced the

petitioner to act in a way that he would not otherwise have." Akbarin, supra., paragraph 24.

Clearly, the Attorney General and the Service were mistaken about the retroactive nature of AEDPA. That flawed interpretation caused the Petitioner's then valid claim for relief to be pretermitted to a time when he may no longer be eligible. Other than appeal and seek Habeas corpus relief, which he did, the Petitioner had no other course of action available to him, with the Immigration Court's acceptance of this position.

Furthermore, the First Circuit, in Kelley v. N.L.R. B., 79 F. 3rd 1238 (1st cir. 1996) recognized that equitable estoppel, and equitable tolling, are closely related. "Courts invoke equitable estoppel when a defendant's conduct causes a plaintiff to delay bringing an action or pursuing a claim he or she was entitled to initiate by law . . . . Equitable tolling, . . . . . is appropriate only when the circumstances which cause a plaintiff to miss a filing deadline are out of his or her hands." Kelley, supra, paragraphs 39-42.

## Conclusion

For all the above reasons, Mr. Barros respectfully requests that this petition be granted and that he be found eligible to apply for discretionary relief from deportation.

Dated: October 26, 2004

Respectfully submitted,
CASIMIRO ARMINIO BARROS
By his attorney,

Mark M. Freeman, Esq. BBO#179080
4 Longfellow Place, 35th Floor
Boston, MA 02114
(617) 227-2800

### CERTIFICATE OF SERVICE

I, Mark M. Freeman, certify that I delivered by First Class mail, postage prepaid, a true copy of the within Petitioner's Memorandum in Support of Petition for Habeas Corpus to the Office of the Regional Counsel, Department of Homeland Security, Room 425, John F. Kennedy Federal Building, Boston, MA, 02203; and the Office of the United States Attorney, One Courthouse Way, Suite 9200, John Joseph Moakley Courthouse, Boston, MA, 02210, on October 26, 2004.

Mark M. Freeman, Esq.