UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASIMIRO ARMINIO BARROS,          )
                                  )
              Petitioner          )
                                  )          Civil Action No.
         v.                       )          04Ccv12259-PBS
                                  )
                                  )
JOHN ASHCROFT, ET AL.             )
                                  )
              Respondents         )

RESPONDENT'S RETURN AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS

**SUMMARY STATEMENT OF THE CASE**

Respondent[1] moves to dismiss the petition for failure to state a claim upon which relief may be granted.

Petitioner has raised three theories of legal error in support of his petition: 1) violation of due process of law, 2) equitable tolling, and 3) equitable estoppel. However, none of these arguments states a colorable claim upon which relief may be granted. See Carranza v. INS, 277 F.3d 65, 71 (1st Cir. 2002) ("[f]ederal courts therefore retain subject matter jurisdiction over habeas petitions brought by aliens facing removal to the extent those petitions are based on colorable claims of legal error, that is, colorable claims that an alien's statutory or constitutional rights have been violated.").

---

[1] The responsive official of the Department of Homeland Security responsible for enforcement of petitioner's removal order in the instant action is Bruce Chadbourne, Field Office Director for Detention and Removal, Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") in Boston, Massachusetts.

At the heart of the petition is the idea that the elapse of time while petitioner was serving his sentence for an aggravated felony conviction[2] -- or some part of that period -- should not be counted toward determining petitioner's ineligibility for section 212(c) relief.[3] Petitioner says that because he was eligible for relief under former Immigration and Nationality Act ("INA") section 212(c), former 8 U.S.C. § 1182(c), at an earlier period during his deportation proceedings (i.e., because he had not yet then served the relief-barring 5-year period), that any subsequent time incarcerated ought not be added for purposes of counting the relief-barring 5-year period.  Petition for Writ of Habeas Corpus, verified Complaint for Declaratory Relief, and for

---

[2] Petitioner was convicted in Norfolk Superior Court, Dedham, Massachusetts, for the offense of Trafficking in Cocaine, and sentenced to 7-9 years incarceration.

[3] Former INA section 212(c) relief was by its terms barred to aliens who had served at least 5 years incarceration for an aggravated felony conviction or convictions. Section 212(c) INA prior to amendment on April 24, 1996, by the AEDPA, provided:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(C). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b).  The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

(Emphasis added).

Stay of Removal ("Petition"), p.6 ¶43 ("Respondents' failure to look back to Petitioner's original eligibility, at the time he was first before the Immigration Court, violates the constitutional guarantee of Due Process of Law.").

However -- although petitioner omits citation of it to the Court -- the First Circuit's decision in Gomes v. Ashcroft, et al., 311 F.3d 43, 45 (1st Cir. 2002) holds directly to the contrary that it is *the date of the final decision of the Board of Immigration Appeals* ("BIA") that is the relevant date for calculation to determine whether an alien is subject to the 5-year bar to section 212(c) relief. ("We join the Second Circuit . . . in holding that the relevant date is when the BIA issued its decision. Buitrago-Cuesta v. INS, 7 F.3d 291, 296 (2d Cir.1993) ('Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for purposes of rendering them ineligible for § 212(c) relief.')"). Gomes v. Ashcroft, 311 F.3d at 45.

Because petitioner does not dispute that he had served at least 5 years for an aggravated felony conviction or convictions by the time of the BIA decision dated October 27, 2003, dismissing his appeal, he has failed to state a claim of legal error in that decision, and the Court should dismiss this case for failure to state a claim upon which relief may be granted.

## BACKGROUND AND FACTS

Petitioner is a native and citizen of Cape Verde, who was admitted to the United States as an alien lawfully admitted for permanent resident on July 5, 1975.  On March 14, 1995, petitioner was convicted in Norfolk Superior Court, Dedham, Massachusetts, for the offense of Trafficking in Cocaine, and was sentenced to 7 to 9 years incarceration.[4]  By administrative Order to Show Cause dated July 6, 1995, deportation proceedings were brought against petitioner charging deportability under the provisions of former sections 241(a)(2)(A)(iii) and 241(a)(2)(B)(i) of the INA, former 8 U.S.C. §§ 1251(a)(2)(A)(iii) and 1251(a)(2)(B)(i), as an alien convicted of an "aggravated felony" defined at 8 U.S.C. § 1101(a)(43), and as an alien convicted of a certain drug-trafficking offense.

Deportation hearings followed with petitioner through counsel admitting the factual allegations in deportation proceedings, but denying deportability.  Petitioner applied for relief from deportation under former section 212(c) of the Immigration and Nationality Act ("INA"), former 8 U.S.C. § 1182(c).  On March 4, 1997, the Immigration Judge found petitioner to be deportable as charged as an alien convicted of an "aggravated felony" and convicted of a drug-trafficking offense, and pretermitted petitioner's application for former INA

---

[4] Petitioner has also served an additional period of incarceration on another aggravated felony conviction, and has additional significant criminal history in the United States.

section 212(c) relief, recognizing that because of an AEDPA[5]
amendment to section 212(c), that discretionary administrative
relief was unavailable to petitioner.[6]  The Immigration Judge
therefore ordered petitioner deported to Cape Verde.  See
Attachment A, Decision of the Immigration Judge, dated March 4,
1997.

Petitioner appealed the deportation order to the Board of
Immigration Appeals ("BIA"), which affirmed the Immigration
Judge's deportation order by decision dated October 10, 1997,
based upon Attorney General Reno's decision in Matter of Soriano,
21 I&N Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997)(1996 WL
426888).  See Attachment B, Decision of the Board of Immigration
Appeals, dated October 10, 1997.

Petitioner filed a petition for writ of habeas corpus on
August 9, 1999, in Barros v. Reno, 99cv11666-GAO (D. Mass. 1999),
which was dismissed by stipulation of the parties on August 16,
2000.  Also on August 16, 2000, the parties jointly moved the BIA

---

[5] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L.
No. 104-132, 110 Stat. 1214 (April 24, 1996)("AEDPA").

[6]  On April 24, 1996, the AEDPA was enacted, section 440(d) of
which amended INA section 212(c) to provide that aliens with
certain classes of criminal convictions -- including the class of
"aggravated felony" convictions -- are statutorily ineligible for
section 212(c) relief. Attorney General Reno declared in a
binding administrative precedent that this relief barred applied
retroactively and to new relief applications. Matter of Soriano,
21 I&N Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997)(1996 WL
426888).  Until Goncalves v. Reno, et al., 144 F.3d 110 (1st Cir.
1998), cert. denied 526 U.S. 1004, the law was unsettled in the
First Circuit as to whether this amendment applied to section
212(c) cases pending on the date of enactment.

for the reopening of petitioner's deportation case to consider
his application for section 212(c), in light of circuit law
holding that the Attorney General's <u>Matter of Soriano</u> decision,
<u>supra</u>, was legal error.

In reopened deportation proceedings the Immigration Judge
determined by decision dated September 24, 2002, that because
petitioner had served at least 5 years on convictions for
aggravated felony offenses petitioner was ineligible for section
212(c) relief under the terms of that section,[7] and ordered
petitioner deported to Cape Verde. <u>See</u> Attachment C, Oral
Decision of the Immigration Judge, dated September 24, 2002.
Petitioner appealed the deportation order to the BIA, and by
decision dated October 27, 2003, the BIA affirmed the deportation
order.  <u>See</u> Attachment D, Decision of the Board of Immigration
Appeals, dated October 27, 2003.

Petitioner filed a petition for judicial review at the First
Circuit Court of Appeals on November 26, 2003, in <u>Barros v.
Ashcroft, et al.</u>, No. 03-2628 (1st Cir. filed Nov. 26, 2003).  On
August 2, 2004, that case was dismissed upon petitioner's own
motion.  On October 26, 2004, the instant action was filed.

Petitioner is not in respondent's custody.

---

[7] <u>See</u> <u>generally</u> <u>INS v. St. Cyr</u>, 533 U.S. 289, 295-96 (2001).

**ARGUMENT**

I.   PETITIONER HAS FAILED TO STATE A COLORABLE CLAIM OF DUE
     PROCESS VIOLATION.

Although petitioner couches his arguments in terms of a "due process" rubric, Petitioner's Memorandum, pp. 5-8, he fails to state any colorable claim under that analysis. Petitioner invokes Mathews v. Eldridge, 424 U.S. 319 (1976) as a standard for due process analysis, but petitioner's complaints are not actually based in the question of whether he was accorded adequate administrative process.  In fact, petitioner has had two decisions by an Immigration Judge, two appeals to and decisions from the Board of Immigration Appeals ("BIA"), two habeas actions to the district court, and one filing, so far, to the circuit court.

Rather, petitioner's complaint is based on the assertion that it was an error of law for the Immigration Judge and the BIA to have denied petitioner's 212(c) application in 1997 based upon Attorney General Reno's interpretation[8] of the retroactive applicability of the AEDPA section 440(d) amendment eliminating 212(c) eligibility.  Ultimately, though, after that interpretation *was* determined to be erroneous by the First Circuit in Goncalves v. Reno, 144 F.3d 110, 114-5 (1st Cir. 1998), cert. denied 526 U.S. 1004, petitioner received a fresh

round of administrative proceedings to consider his 212(c) relief
eligibility, without application of the AEDPA relief-barring
amendment.

Petitioner's second round of administrative hearings
resulted in a determination that petitioner was ineligible for
relief under former INA section 212(c), based upon the undisputed
fact that petitioner by then had served five years or longer on
his aggravated felony convictions. See generally Barreiro v. INS,
989 F.2d 62, 64 (1st Cir. 1993)(discussing 5-year bar to INA
212(c) eligibility and rejecting claim that the 1990 5-year bar
amendment was not intended by Congress to be applied
retroactively).

Because petitioner fails to assert any genuine process
challenge to his deportation order, and because all of
petitioner's "due process" arguments in the end amount to
assignments of legal error asserted elsewhere in his petition --
see ARGUMENT, Parts II and III, infra, petitioner fails to state
any colorable due process claim upon which relief may be granted.

Accordingly, the case should be dismissed for failure to
state a claim upon which relief may be granted.

II.  PETITIONER HAS FAILED TO STATE A COLORABLE CLAIM OF
     ENTITLEMENT TO "EQUITABLE TOLLING", EVEN ASSUMING ARGUENDO
     IT IS APPLICABLE TO HIS CASE.

It is plain that petitioner's "equitable tolling" theory
fails to state any claim upon which relief may be granted.  The

_____

[8] See Matter of Soriano, 21 I&N Dec. 516, 533 (Op. Att'y Gen.

doctrine of equitable tolling provides that in exceptional circumstances, a statute of limitations "may be extended for equitable reasons not acknowledged in the statute creating the limitations period." David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003); Delaney v. Matesanz, 264 F.3d 7, 13-14 (1st Cir. 2001).  However, there is no "limitations period" at issue in petitioner's case such as might even introduce equitable tolling into the equation.[9]  In 1990, Congress had simply created a substantive elimination of former INA section 212(c) relief for certain aliens who had served at least 5 years incarceration, see generally Barreiro v. INS, supra, and petitioner was ultimately denied section 212(c) relief upon that basis.  See Gomes v. Ashcroft, et al., 311 F.3d 43, 45 (1st Cir. 2002) (where alien prior to final order of deportation "had served more than five years in prison . . . . [u]nder IMMACT, therefore, he was ineligible for former section 212(c) relief.").

    Because the former INS had unfettered discretion whether or when to initiate deportation proceedings, petitioner never had any claim to demand an adjudication of his 212(c) relief

---

Feb. 21, 1997)(1996 WL 426888).

application prior to the elapse of his having served 5 years.
Cf. Costa v. INS, 233 F.3d 31, 37-8 (1st Cir. 2000) (the INS "has
broad discretion in deciding, administratively, whether and when
to pursue deportation against an alien . . . . [and] [t]here is
no set time either for initiating a deportation proceeding or for
filing a served OSC. . . .  Indeed . . . the INS has virtually
unfettered discretion in such respects", so that "[a]n alien
illegally in the United States cannot force the Attorney
General's hand by the simple expedient of calling attention to
his status and demanding immediate action.").

        Even if equitable tolling were applicable to a non-
limitations area of substantive immigration law, the fact of the
matter is that petitioner knew when he pleaded guilty in March of
1995 to his drug-trafficking charge that he could well be
sentenced to and serve a term of incarceration of up to or more
than 5 years.  It is especially significant that at the time
petitioner pleaded guilty, the INA section 212(c) 5-year bar had
already been on the books for years, having been enacted in 1990.
See Barreiro v. INS, supra (discussing goals of the 1990

---

[9] Petitioner's citation to Neverson v. Bissonnette, 261 F.3d 120
(1st Cir. 2001) for the proposition that equitable tolling may
also be applied to time bars that are not deadlines is
inapposite.  In Neverson the court of appeals was concerned not
with a substantive immigration-relief ineligibility, but with a
deadline for filing a habeas petition under 28 U.S.C. §
2244(d)(1).  Even at that, the First Circuit clearly stated: "Is
equitable tolling available to extend the one-year limitation
period specified in section 2241(d)(1)?  We take no view on
these, or any other, issues." Neverson v. Bissonnette, 261 F.3d
at 127.

amendment and rejecting claim that the 1990 5-year bar amendment
was not intended by Congress to be applied retroactively).  See
DiPeppe v. Quarantillo, 337 F.3d 326, 333 (3rd Cir. 2003)
(rejecting similar section 212(c) estoppel argument and observing
"[petitioner] knew when she entered her guilty plea that she
would be exposed to a period of incarceration that could preclude
consideration under § 212(c).").

     Petitioner seems to be suggesting that because his
deportation case continued in litigation until a time when he had
accumulated 5 years' incarceration on his aggravated felony
conviction, that "equitable tolling" should somehow operate to
indulge a legal fiction that he isn't now barred from relief by
the terms of former INA section 212(c).  Petitioner asserts that
"the further passage of time, due solely to [respondent's]
incorrect interpretation of the law, which they themselves
asserted, now makes Mr. Barros ineligible for the relief sought."
Petition, pp. 8-9.  However, petitioner cites no competent
authority for the proposition that equitable tolling can be
applied to his case.

     Petitioner cites mistakenly to Jobe v. INS, 212 F.3d 674
(1st Cir. 2000) as support for his case.  However on rehearing en
banc in Jobe the First Circuit withdrew its panel decision and
ultimately made no determination as to whether equitable tolling
could apply to the immigration statute at issue in that case,
because it was determined that Jobe was not factually entitled to

it anyway.  Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001)("we do not decide whether the equitable tolling doctrine applies to INA § 242B(c)(3)(A) but rather dismiss Jobe's petition because he is not factually entitled to equitable tolling and because application of the statute in these circumstances does not deprive him of due process.").

In reaching its conclusion that, whether or not equitable tolling was even applicable, Jobe failed to satisfy the equitable tolling requirements, Jobe observed that "[e]ven when it applies, equitable tolling is a 'sparingly' invoked doctrine." Jobe v. INS, 238 F.3d at 100.  Nonetheless, the First Circuit remarked that "[w]e have identified five factors that should guide courts in evaluating a claimant's entitlement to such tolling: (1) a lack of actual notice of a time limit; (2) a lack of constructive notice of a time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit.". Id.  The First Circuit concluded that Jobe failed to establish a factual entitlement to equitable tolling, and this Court should likewise determine that the instant petitioner has failed to state any cognizable claim under that theory, assuming arguendo it would even be applicable.

In Jobe the First Circuit noted that the petitioner "bears the burden of making a prima facie showing of entitlement to equitable tolling". Jobe v. INS, 238 F.3d at 101.  As a

fundamental principle, the First Circuit recognized also that
equitable tolling "is appropriate only when the circumstances
that cause a [party] to miss a filing deadline are out of his
hands." Jobe v. INS, 238 F.3d at 100, citing Salois v. Dime
Savings Bank, 128 F.3d 20, 25 (1st Cir. 1997).  Moreover,
"[e]quitable tolling is unavailing where a party fails to
exercise due diligence." Jobe v. INS, 238 F.3d at 100, citing
Benitez-Pons v. Commonwealth of Puerto Rico, 136 F.3d 54, 61 (1st
Cir. 1998).

The factual premise in Jobe was that an alien petitioner had
been ordered deported in absentia but was denied administrative
reopening of his deportation order by the Immigration Judge and
the BIA because petitioner had failed to timely file his motion
to reopen within the statutory window for such filings.  The
petitioner argued that ineffective assistance of counsel
accounted for not only his missing his deportation hearing, but
also for his missing the motion to reopen deadline, and that
therefore equitable tolling should be applied to allow his motion
to reopen the in absentia order to be heard administratively.

The First Circuit, however, reasoned that even if it were
assumed that petitioner could have satisfied the substantive
standard for reopening on an otherwise proper motion to reopen,[10]
and even if it were that assumed petitioner did not get actual

---

[10] Jobe assumed arguendo that Jobe had demonstrated "exceptional
circumstances" accounting for his failure to attend this
scheduled deportation hearing.  Jobe v. INS, 238 F.3d at 100.

notice of his in absentia deportation order until after the
motion to reopen deadline had already run, petitioner had not
established entitlement to equitable tolling of the motion to
reopen deadline.

Jobe en banc found it dispositive that "several months"
before the motion to reopen deadline the petitioner had "learned
that an [Immigration Judge] had taken some action on his asylum
application and was advised to consult an attorney immediately."
Jobe v. INS, 238 F.3d at 101.  The Jobe court the observed that
petitioner "took no action to protect his rights for more than
half a year", and that "this fact conclusively establishes that
Jobe was insufficiently diligent in pursuing his asylum
application to warrant the provision of any equitable relief that
might be available under the statute." Jobe v. INS, 238 F.3d at
101.  "So too", added the Jobe court, "does this fact fatally
undermine the premise of the as-applied due process argument"
pressed by Jobe.  Id.

In the instant case, petitioner had at least constructive
notice that his 1995 guilty plea might result in his being
disqualified from relief under former section 212(c) if he served
more than a 5-year term of incarceration for his aggravated
felony conviction. This is so because the 5-year bar was enacted
November 29, 1990, and petitioner's guilty plea-based conviction
was dated March 14, 1995.  So there was no "lack of notice" as to

14

the potential consequences flowing from petitioner's plea-based drug-trafficking conviction and sentence.

Second, petitioner cannot be said to have been sufficiently diligent in pursuit of his claim. Petitioner's application for relief under former section 212(c) was pretermitted on March 4, 1997, by the Immigration Judge in accordance with a binding interpretation made by the Attorney General concerning retroactive application of certain relief-barring amendments enacted in 1996.[11] See generally Goncalves v. Reno, 144 F.3d 110, 114-5 (1st Cir. 1998), cert. denied 526 U.S. 1004 (detailing the chronology of the administrative positions on retroactive application of AEDPA section 440(d)). Petitioner dutifully appealed that determination, but the BIA dismissed the appeal by decision dated October 10, 1997. Petitioner did not then seek judicial review of that decision.

The First Circuit, on May 15, 1998, then decided Goncalves v. Reno, 144 F.3d 110 (1st Cir. 1998), cert. denied 526 U.S. 1004. In Goncalves the First Circuit determined that habeas corpus review in the district courts for pure issues of law had not been repealed by the 1996 amendments to the immigration statute, and that, on a substantive statutory issue, Congress expected "that new restrictions [on availability for INA section 212(c) relief for aliens convicted of certain crimes, see AEDPA section 440(d)] would not be applied retroactively to pending

[INA section 212(c) relief] applications."). <u>Goncalves v. Reno</u>, 144 F.3d at 130.

All this was made manifest by publication on May 15, 1998. Still, petitioner did not then seek habeas corpus review, even though the First Circuit had just said in <u>Goncalves</u> that such review was available and that, in the First Circuit at least, the Attorney General's administrative interpretation regarding section 212(c) eligibility -- the very interpretation applied against petitioner by the Immigration Judge and the BIA -- was, as applied to pending cases, wrong as a matter of law.[12]

Meanwhile, petitioner's incarceration approached and passed the 5-year mark on his aggravated felony sentence.[13] <u>Cf</u>. <u>INS v. Miranda</u>, 459 U.S. 14, 18 (1982) (INS delay in processing relief application, even if negligent, does not prevent it from denying that application where the applicant becomes statutorily

_____

[11] <u>See</u> <u>Matter of Soriano</u>, 21 I&N Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997)(1996 WL 426888).

[12] <u>Goncalves</u> was non-committal as to whether only aliens who had pending 212(c) applications as of April 24, 1996, were covered by the favorable ruling, or whether all otherwise qualifying aliens who were in deportation proceedings as of that date were also covered.  The First Circuit clarified that matter by ruling that the broader universe was intended, in <u>Wallace v. Reno</u>, 194 F.3d 279, 285-87 (1st Cir. 1999).  It was open to petitioner to have pursued the same route as the alien in <u>Wallace</u>, but he delayed until he had already become ineligible for 212(c) relief upon that sections 5-year bar basis.

[13] <u>See</u> Attachment A, Oral Decision of the Immigration Judge dated March 4, 1997, pp. 3-4, noting that as of the date of the March 14, 1995, conviction, petitioner was given time-served credit for 238 days.

ineligible for the relief during the period of delay); Mahabir v. Ashcroft, --- F.3d --- (1st Cir. 2004)(2004 WL 2367242, *4)(court observing in the context of equitable estoppel and equitable tolling discussion that even if discretionary relief application had been timely adjudicated before delay eliminated eligibility, "[t]here is no guarantee" that the relief would have been granted because the ultimate determination lay "entirely within the discretion of the Attorney General".).

Only thereafter, on August 9, 1999, 22 months after the BIA had dismissed his appeal, and well over a year after the First Circuit had ruled in Goncalves that 212(c) relief was not barred to him as decided by the BIA, did petitioner file a petition for writ of habeas corpus.  In other words, petitioner applied to the courts for relief only *after* he had allowed 5 years in confinement to elapse and he became ineligible for section 212(c) relief.

Nor can it be said that there is an "absence of prejudice to a party opponent", as set out as a factor in the equitable tolling analysis.  Jobe v. INS, 238 F.3d at 100.  The DHS has a strong interest in enforcing deportation orders against criminal aliens such as the petitioner for whom Congress his eliminated the possibility of administrative relief.  Ignoring the statutory 5-year bar to former INA section 212(c) does prejudice the mission of DHS in enforcing the deportation of criminal aliens.

Finally, there has been no demonstration of "the claimant's reasonableness in remaining ignorant of the time limit." Jobe v. INS, 238 F.3d at 100.  Petitioner has been represented by counsel throughout his deportation odyssey, the 5-year bar to section 212(c) relief has been law since 1990. See DiPeppe v. Quarantillo, 337 F.3d 326, 333 (3rd Cir. 2003) (observing "[petitioner] knew when she entered her guilty plea that she would be exposed to a period of incarceration that could preclude consideration under § 212(c).").  In addition, the First Circuit's May 15, 1998, Goncalves decision, supra, was on that was published.  Under these facts there is no reasonable excuse for allowing the 5 years incarceration to run before seeking judicial relief.

Nor is the instant petitioner on any better ground than the Jobe petitioner to assert entitlement to equitable tolling.  The instant petitioner waited for more than 22 months before taking any action to challenge the BIA deportation order, waited almost 15 months after Goncalves established that Attorney General Reno's interpretation was incorrect to apply for section 212(c) relief and to seek enforcement of that right in habeas corpus proceedings to file a habeas action, and did nothing at all to prosecute his argument for section 212(c) eligibility until after he had already become ineligible for that relief under a separate provision of law (the 5-year bar).

In other words, petitioner at the time of the BIA's final deportation order on October 10, 1997, knew that his incarceration, or "confinement clock", was ticking inexorably toward the 5-year mark for section 212(c) ineligibility, and that, as a matter of arithmetic, the mere elapse of time in criminal incarceration for his criminal conviction would operate to render him as statutorily ineligible for that relief at a certain point in the future. Petitioner's citation to <u>Matter of Ramirez-Somera</u>, 20 I&N Dec. 564 (BIA 1992)(1992 WL 301623) misses the mark widely. In that case, an Immigration Judge's order of deportation was reversed by the BIA because the judge had pretermitted the alien's application for section 212(c) based upon the alien's *sentence* to incarceration for at least 5 years, though at the time of the judge's ruling the alien had not in fact *served* 5 years.  In the instant case, it is undisputed that the only findings of ineligibility based on the 5-year bar occurred after petitioner had *served* at least 5 years.

Accordingly, even assuming that an "equitable tolling" analysis would otherwise be applicable, petitioner has failed to establish any colorable entitlement to it and the case should be dismissed for failure to state a claim upon which relief may be granted.

III. PETITIONER HAS FAILED TO STATE A COLORABLE CLAIM OF
     ENTITLEMENT TO "EQUITABLE ESTOPPEL", EVEN ASSUMING ARGUENDO
     IT IS APPLICABLE TO HIS CASE.

The First Circuit has remarked that "[i]f estoppel against
the government possesses any viability . . . the phenomenon
occurs only in the most extreme circumstances." Dantran, Inc. v.
United States Dept. of Labor, 171 F.3d 58, 66 (1st Cir. 1999).
Petitioner relies upon Akbarin v. INS, 669 F.2d 839 (1st Cir.
1982) to say that equitable estoppel has been recognized as
available in certain immigration cases.  Petitioner's Memorandum,
p.9.  However, Akbarin, was decided prior to the Supreme Court's
estoppel ruling in INS v. Miranda, 459 U.S. 14, 18 (1982) (INS
delay in processing relief application, even if negligent, does
not prevent it from denying that application where the applicant
becomes statutorily ineligible for the relief during the period
of delay).  Nor did Akbarin even find an estoppel against the
former INS.  Rather, the circuit court simply found that the
Immigration Judge erred as a matter of law in excluding as
irrelevant certain evidence going to an estoppel defense in
deportation proceedings.  Similarly, Best v. Stetson, 691 F.2d 42
(1st Cir. 1982), a non-immigration case also cited by petitioner,
was simply an administrative remand, did not find an estoppel,
and likewise was decided before the issuance of INS v. Miranda,
459 U.S. 14 (1982).

It was made clear in INS v. Miranda, 459 U.S. 14 , 19 (1982)
that the Supreme Court did not reach the question "whether
affirmative misconduct in a particular case would estop the
Government from enforcing the immigration laws."  In Miranda, the

20

United States citizen spouse of the petitioner had filed with the INS visa-related paperwork (a visa-petition) whose aim was to qualify the court petitioner for lawful permanent residence in the United States.  There was a delay in the INS adjudication of the visa petition of around 18 months, during which time the marriage broke up, and the alien consequently was rendered ineligible for adjustment to lawful resident status due to the United States spouse's withdrawal of the visa-petition.

The petitioner in Miranda argued in administrative deportation proceedings that the INS was estopped from denying his application for permanent residence because of the "unreasonable delay" in acting sooner (i.e., before the break-up of the marriage).  The Ninth Circuit agreed with petitioner that the "unexplained failure" of INS to act for 18 months on the visa-petition "was affirmative misconduct by the INS." Miranda v. INS, 628 F.2d 83, 84 (9th Cir. 1980).  Upon review, the Supreme Court remanded Miranda, but the Ninth Circuit again found an estoppel against the INS.  Back before the Supreme Court yet again, the Miranda Court ruled that it need not determine "whether affirmative misconduct in a particular case would estop the Government from enforcing the immigration laws", because "proof only that the Government failed to process promptly an application falls far short of establishing such conduct." INS v. Miranda, 459 U.S. at 19.

In the instant case also, petitioner's claim boils down to the notion that a delay in processing his administrative relief application is an "affirmative misconduct" where the delay attends an elimination of the administrative relief at issue. However, INS v. Miranda stands as authority for the proposition that mere governmental delay which results in elimination of relief eligibility is not "affirmative misconduct", even assuming that an estoppel analysis would ever be applicable against government enforcement of the immigration laws.

In fact, the Miranda Court observed that there was "[a]n increasingly important interest, implicating matters of broad public concern [] involved in [immigration cases]", and expressed concern that "[e]nforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult." INS v. Miranda, 459 U.S. at 19.  In that connection the Court held that "proof only that the Government failed to process promptly an application falls far short of establishing such conduct." INS v. Miranda, 459 U.S. at 19.

Moreover, even if one were to continue to pursue the question of alleged "affirmative misconduct" alleged in this case, there is none.  Petitioner's central theme is that because the position of Attorney General Reno in Matter of Soriano, 21 I&N Dec. 516, 533 (Op. Att'y Gen. Feb. 21, 1997)(1996 WL 426888), mandated that petitioner was statutorily ineligible for section 212(c) relief, and because this interpretation was later held to

be incorrect in the courts, <u>see</u> <u>e.g.</u> <u>Goncalves v. Reno</u>, 144 F.3d 110, 114-5 (1st Cir. 1998), <u>cert</u>. <u>denied</u> 526 U.S. 1004, and <u>INS v. St. Cyr</u>, 533 U.S. 289 (2001), that therefore the past adherence to the then-binding[14] interpretation of law by the Board of Immigration Appeals in affirming the denial of petitioner's 212(c) application was "affirmative misconduct".

The flaws in this argument are several.  First, petitioner has advanced no case law for the proposition that ordinary government compliance with binding administrative precedent can ever amount to an "affirmative misconduct" by the government. Courts and administrative bodies make decisions all the time based upon legal authorities that may later be modified or overruled by appellate bodies.  Indeed, administrative decision-makers are *obligated* to adhere to the controlling authorities in their respective realms, and not "inexplicably depart" from the rule of law from case to case.

In the instant case, petitioner acknowledges that the BIA affirmance of the Immigration Judge's denial of petitioner's 212(c) application was "based upon the Attorney General's ruling with regard to the retroactive application of AEDPA." Petitioner's Memorandum, p.7.  Yet, petitioner cites no authority for his position that administrative compliance with outstanding administrative precedent can ever amount to an "affirmative

---

[14] <u>See</u> 8 C.F.R. § 1003.1(g) (decisions of the Attorney General are binding on all administrative officers).

misconduct" by the government in an immigration enforcement

context.  See e.g. United States v. Hernandez-Rodriguez, 170

F.Supp.2d 700, 704  (N.D. Tex. 2001)("The court declines to hold

that, because [the immigration judge] applied law that ultimately

was deemed incorrect, the deportation proceeding was

fundamentally unfair."); cf. Herrera-Inirio v. INS, 208 F.3d 299,

309 (1st Cir. 2000)("Executive actions that do no more than

comport with valid statutory commands simply are not the stuff

from which substantive due process violations can be fashioned.

See Kleindienst [v. Mandel], 408 U.S. [753 (U.S. 1972)] at 770,

92 S.Ct. 2576.").

      Indeed, in Davis v. Ashcroft, No. 01 CIV. 6228(DLC)

(S.D.N.Y. 2003)(2003 WL 289624) the New York district court was

faced with an essentially identical fact-pattern, but rejected a

habeas claim of equitable estoppel.  The alien habeas petitioner

in Davis raised the claim that the INS should have been estopped

from asserting the 5-year ban because agency delays caused by an

erroneous application of Attorney General Reno's Matter of

Soriano decision resulted in five years incarceration passing

before a final deportation order entered.  Id. at *6.  The

district court observed that the Immigration Judge and the BIA

"treated Davis's case according to the interpretation of AEDPA

and IIRIRA adopted by the Attorney General and applied throughout

the INS," and that "[w]hether or not the 1996 amendments to the

INA could be applied retroactively was a complicated question of

law which the Supreme Court and the [circuit court] eventually addressed at length." Id. at *7.

The Davis court therefore concluded that "[e]ven the [Immigration Judge's] erroneous application of AEDPA/IIRIRA to bar Davis's initial application for a Section 212(c) waiver does not amount to the type of affirmative misconduct that warrants the application of equitable estoppel." Id.

Second, even if one were otherwise inclined to view the BIA's compliance with the Attorney General's controlling interpretation as a "misconduct" of some kind, petitioner's inertia in the face of the First Circuit's rejection of that interpretation in Goncalves v. Reno, supra, remains unexplained. Nor should it be forgotten that the legally proximate case of petitioner's statutory ineligibility for relief under former INA section 212(c) was not a mistaken interpretation of law by the Attorney General, but rather was the fact of petitioner's own aggravated felony conviction that resulted in his serving a term of incarceration of at least 5 years. Cf. Mattis v. INS, 212 F.3d 31 (1st Cir. 2000), abrogated on other grounds, 533 U.S. 289 (recognizing that statutory eligibility for section 212(c) relief could depend on when INS chose to initiate deportation proceeding).

The leading authority in this circuit on estoppel in the immigration law context is Costa v. INS, 233 F.3d 31 (1st Cir. 2000). In Costa one of the alien petitioner's claims was that

the failure of the former INS to place him into deportation
proceedings prior to April 1, 1997 -- the effective date for the
elimination of "suspension of deportation" as an administrative
relief -- worked as an estoppel against denying him the right to
apply for that administrative relief.  At the outset, the First
Circuit observed that "[a]sserting an estoppel against the
government is more easily said than done." Costa v. INS, 233 F.3d
at 38. This means, said Costa, that in addition to the
traditional elements of an estoppel, a proponent must also
establish the government's "affirmative misconduct."  Id.

    "The upshot" of the estoppel standard against the government
was described by Costa as: (1) the occurrence of affirmative
government misconduct, (2) engendering a reasonable (though
erroneous) belief that a certain state of affairs exists, (3)
upon which the private party relies to his detriment.  Costa also
remarked that "[g]iven the rigors of this gauntlet, it is not
surprising that estoppel against the government if it exists at
all is hen's teeth rare." Id., citing United States v. Ven-Fuel,
Inc., 758 F.2d 741, 761 (1st Cir. 1985)("The possibility of harm
to a private party inherent in denying equitable estoppel . . .
is often (if not always) grossly outweighed by the pressing
public interest in the enforcement of congressionally mandated
public policy.").

    The Costa court determined that the petitioner had failed to
overcome the obstacles to demonstrating an estoppel case against

26

the former INS.  The court noted first that the INS had done
nothing wrong, because the INS has "virtually unfettered
discretion" to decide when to bring a deportation case against an
alien. Id.  Second, the First Circuit found that the petitioner
had failed to make out a showing of detrimental reliance,
reasoning that "because he had no right to call the tune as to
when the INS would commence deportation proceedings against him,
he cannot claim reasonable reliance on the import of the
[administrative charging document in deportation proceedings]
(and at any rate, he did not change his position because of it.)"
Id.

    Of special significance to the instant action, the First
Circuit noted in this important connection that "in order for
there to be detrimental reliance, the aggrieved party must show
that he has surrendered a right that he possessed." Id. [citation
omitted]. Costa found however that "the petitioner had no right
to suspension of deportation.  He had at most a hope of obtaining
discretionary relief." Id. at n.7.

    In the instant case, the estoppel claim is even weaker than
the one rejected in Costa.  As in Costa, whether or when a
deportation case was ever brought against petitioner was
essentially a matter of prosecutorial discretion.  As Costa put
it: the INS "has broad discretion in deciding, administratively,
whether and when to pursue deportation against an alien."  Id. at
37.  Indeed it is likely the INS could have declined to even

27

begin proceedings against petitioner until he had already *completed* the relief-disabling 5-year term of incarceration, though it did no such thing.  Also, as in <u>Costa</u>, the ultimate administrative relief in contention was, in the end, discretionary, so that petitioner had no "right" to it, but "at most, a hope of obtaining discretionary relief." <u>Id</u>. at p.38 n.7. It follows that, as in <u>Costa</u>, the instant petitioner has failed to show any detrimental reliance anywhere.[15]

Where the instant case departs for the worse is that, whereas in <u>Costa</u> the elimination of administrative relief eligibility turned upon the prosecutorial vagaries of whether the INS initiated deportation proceedings before or after the April 1, 1997, statutory repeal of the relief at issue, in the instant case it was petitioner himself who started the 5-year count-down to 212(c) ineligibility by his plea-based aggravated felony conviction and sentence to confinement, occurring years after the 5-year bar was already on the books as a feature of law.  What is more, despite the First Circuit's rejection of the Attorney General's administrative interpretation, in <u>Goncalves v. Reno</u>, <u>supra</u>, petitioner waited almost 15 months longer to file a habeas

---

[15] <u>See</u> <u>also</u> <u>Chen v. INS</u>, 87 F.3d 5, 8 (1st Cir. 1996) (section 212(c) applications "are not profligately to be granted", and where a serious crime was committed by the alien applicant, "a high hurdle blocks the path to section 212(c) relief."); <u>Gouveia v. INS</u>, 980 F.2d 814, 817 (1st Cir. 1992) (where alien has committed a serious crime "it is incumbent upon a petitioner not only to demonstrate that favorable factors preponderate but also to present 'unusual or outstanding equities'" in order to justify a waiver).

action, by which time he had already become ineligible for section 212(c) relief due to the length of his incarceration.

Finally, and dispositively, the First Circuit's decision in Gomes v. Ashcroft, et al., 311 F.3d 43, 45 (1st Cir. 2002) directly holds that it is *the date of the final decision of the Board of Immigration Appeals* ("BIA") that is the relevant date for calculation to determine whether an alien is subject to the 5-year bar to section 212(c) relief. "We join the Second Circuit . . . in holding that the relevant date is when the BIA issued its decision. Buitrago-Cuesta v. INS, 7 F.3d 291, 296 (2d Cir.1993) ('Just as we credit aliens for time spent in the country while an appeal is pending before the BIA so that they are eligible for § 212(c) relief, we will also consider the time aliens spend in prison during the course of a hearing for purposes of rendering them ineligible for § 212(c) relief.')". Id. Because petitioner's final order of deportation was issued by the BIA on October 27, 2003, Petitioner's Memorandum at 4, some four years after petitioner had already served at least a 5-year period of incarceration, the BIA correctly determined petitioner to be ineligible for relief under former INA section 212(c).

Accordingly, the case should be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons set out above, the Court should dismiss the petition, and deny all other relief sought.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                    By:  s/Frank Crowley
                         FRANK CROWLEY
                         Special Assistant U.S. Attorney
                         United States Immigration &
                         Naturalization Service
                         P.O. Box 8728
                         J.F.K. Station
                         Boston, MA 02114
                         (617) 565-2415


                    **CERTIFICATE OF SERVICE**

I hereby certify that I caused true copy of the above document to be served upon counsel for petitioner by mail on December 1, 2004.

                              s/Frank Crowley
                              FRANK CROWLEY
                              Special Assistant U.S. Attorney
                              Department of Homeland Security
                              P.O. Box 8728
                              J.F.K. Station
                              Boston, MA 02114